**Dated: May 26, 2016**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 16-10808-JDL |
| JAMES E. OLIVER, ) | Chapter 13 |
| ) | |
| Debtor. ) | |

### ORDER DENYING DEBTOR'S MOTION TO STRIKE RULE 2004 HEARING

This matter comes on for consideration upon *Debtor's Motion to Strike Rule 2004 Hearing Set on May 31, 2016 as Moot and Allow the Chapter 13 Bankruptcy to be Voluntarily Dismissed,* filed on May 23, 2016 *(* the *"Motion")* [ Doc. 46] and the *Objection of United States Trustee to the Debtor's Motion to Strike Rule 2004 Examination,* filed May 24, 2016 (the "*Objection*") [Doc. 48]. By his *Motion*, Debtor seeks to "strike" the 2004 examination which was ordered by this court on May 19, 2016 [Doc. 39 ] on the basis that such 2004 examination "is a moot item since there is a voluntary motion to dismiss the Chapter 13 for hearing".

In normal circumstances the Court would give short shrift to Debtor's *Motion* and

summarily overrule same; however, given the rather unique and extremely serious issues involved herein as well as Debtor's apparent total misapprehension of applicable substantive and procedural law, a brief background of the facts and circumstances surrounding this debtor and the case is necessary.

## Background

Debtor is an attorney who was admitted to practice in Oklahoma in 1967 with an emphasis in bankruptcy practice. By order of October 29, 2014, Debtor was suspended from practicing before this court for approximately thirty days, or until December 1, 2014, for his failure to comply with the filing of pleadings in accordance with CM/ECF Guidelines and otherwise acting in an unprofessional manner.[1] Due to his failure to rectify procedural errors under the CM/ECF Guidelines, on January 14, 2015, Debtor was suspended for sixty days, or until March 15, 2015, with the admission to practice being "contingent upon satisfactory completion of remedial training and testing, as well as certification by the Court Clerk that Oliver is capable of completely drafting and filing documents in a manner that complies with applicable Local Rules and CM/ECF Guidelines".[2] On April 17, 2015, the Court found that Debtor failed to complete the remedial training and testing to the satisfaction of the Court and granted him an additional thirty days to so comply or face permanent suspension from practicing in the Bankruptcy Court.[3] On May 7, 2015, the

---

[1] *In re James Edward Oliver, Attorney,* Case No. MP-14-00102 [Doc.8; *Order Suspending James Edward Oliver from Practicing Before This Court*].

[2] *Id. Order Suspending James Edward Oliver from Practicing Before this Court For at Least Sixty (60) Days* [Doc. 16].

[3] *Id. Order Supplementing Order Suspending James Edward Oliver from Practicing Before this Court for at Least Sixty (60) Days* [Doc. 18].

Court gave Debtor additional time, or until June 8, 2015, to complete and submit a draft template of nine (9) frequently filed documents in order to assure that they were in compliance with Local Rules and CM/ECF Guidelines and to submit to the court a declaration under oath by a bankruptcy attorney confirming that such attorney had agreed to associate with Debtor and assist him in the preparation and filing of documents with the Court.[4] Following an evidentiary hearing, on June 15, 2015, the Court entered its *Order Permanently Suspending James Edward Oliver from Practicing in the United States Bankruptcy Court for the Western District of Oklahoma* [5] for, among other reasons, failing to notify his clients of his suspension from practicing in the Bankruptcy Court.[6]

On March 9, 2016, Debtor, acting through counsel, filed his Chapter 13 Petition and proposed Chapter 13 Plan. [Docs. 1 and 4]. On March 27, 2016, counsel filed a *Motion to Withdraw as Counsel of Record*, and on April 13, 2016, the Court entered its *Order Granting Motion to Withdraw as Counsel of Record* [Doc.18]. Since that time, Debtor has been proceeding *pro se.*

Debtor's Petition reflected that he had filed four previous bankruptcies, three of which were Chapter 13 cases filed in 2010, 2011 and 2012, two of which were dismissed

---

[4] *Id. Order Setting Deadline for Either Terminating Suspension or Making Suspension Permanent* [Doc. 27].

[5] *Id.* [Doc. 29].

[6] On March 29, 2016, a Debtor received a "public censure" by the Oklahoma Supreme Court as a result of his conduct in the Bankruptcy Court and for failing to report his suspension in the Bankruptcy Court to the Oklahoma Supreme Court and failing to advise his clients of his Bankruptcy Court suspension. *State of Oklahoma ex rel. Oklahoma Bar Association, Complainant v. James Edward Oliver, Respondent,* SCBD 6268.

3


without confirmation of a Chapter 13 Plan and one dismissed post-confirmation for failure to make plan payments. [Doc. 1, pg. 8].[7] In those three cases, Debtor did not include in his Schedules or Statement of Financial Affairs the ownership of any real property other than his Oklahoma City homestead[8] or any contingent or non-contingent interest in the estate of a decedent.

In the present case, the Debtor in his Schedule A/B filed with the Petition on March 9, 2016, in addition to his Oklahoma City residence valued at $750,000, listed fee simple ownership of fourteen (14) parcels of property consisting of four (4) tracks described by metes and bounds totaling 155 acres valued at $412,650 and ten (10) parcels consisting of a total of one hundred twenty-nine (129) lots valued at $129,000. [Doc. 1, pgs. 12-16]. As stated previously, these properties were never listed in the debtor's three prior chapter 13 bankruptcies, although Debtor clearly had an interest in same during the pertinent time periods.

On April 21, 2016, the Meeting of Creditors was held and the debtor examined. On April 29, 2016, the Office of the United States Trustee (UST) filed its *Motion for Examination Pursuant to Rule 2004 and Request to Shorten Records Discovery Deadline*

---

[7] Case No. 10-15473 filed 9/02/2010; Case No. 11-14041 filed 7/26/2011; Case No. 12-11772 filed 4/10 /2012.

[8] In fact, in Case Nos. 10-15473 and 11-14041 Debtor never listed the residence in either Schedule A or C. Those two cases were dismissed and closed prior to confirmation. In Case No. 12-11772 the Schedules filed with the Petition on April 10, 2012, reflected no ownership of realty on either Schedule A or exemptions under Schedule C. After the Meeting of Creditors, on July 30, 2012, Debtor filed *Amended Schedules* A and C reflecting the ownership of his Oklahoma City residence having a value of $770,000. The Plan was confirmed, but the case dismissed three months later for the Debtor's failure to make Plan payments.

(the "*2004 Motion*") [Doc 25]. The primary basis of the *2004 Motion* was that "Oliver has failed to properly disclose his interest in the estate of Maxine E. Oliver", Debtor's mother, and the UST sought through this examination "to discover additional information about the probate estate and the assets from the probate estate that have become assets of Oliver, or will eventually become assets of Oliver". The *2004 Motion* requested an order from the Court for the Debtor to produce requested documents and records by May 27, 2016 and for the examination of the Debtor to take place on May 31, 2016.

In an apparent response to the *2004 Motion*, on May 9, 2016, the Debtor filed a *Motion to Dismiss Chapter 13 Bankruptcy* asserting that "it is not necessary to continue with the Bankruptcy" and "it will be difficult to have the plan made feasible". [Doc 29]. There is little doubt in this Court's mind that Debtor was attempting to utilize his *Motion to Dismiss* as an "escape hatch" to extract himself from the consequences of having concealed assets in his prior bankruptcies.

The following day, the UST filed its *Amended Motion of the United States Trustee to Convert Case to One Under Chapter 7* (the "*Conversion Motion*") [Doc 31], on the basis that Debtor had admitted at the Meeting of Creditors that in his three prior bankruptcies and this bankruptcy he had failed to disclose any information about his mother's pending probate in the District Court of Logan County, Oklahoma. Debtor had also in his prior bankruptcies failed to disclose his interest in the fourteen (14) parcels of real estate disclosed in the present case, apparently owned by him or to be owned by him through his mother's probate estate. Debtor filed his *Reply* to the UST's *Conversion Motion* generally denying every allegation contained in the *Conversion Motion* and asserting that "the Debtor

5

is not eligible for Chapter 7, the *Motion to Dismiss* should be granted and all other matters should be dismissed as moot". [Doc. 38].

Debtor did not respond to the UST's *2004 Motion*. On May 18, 2016, the Court entered its *Order on Motion of the United States Trustee for Examination Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (the *"2004 Order"*) [Doc. 39] directing the Debtor to appear for examination on May 31, 2016 at 10:00 AM at the office of the United States Trustee. On May 19, 2016, the Court entered its Order Striking Pleading and Hearing [Doc. 42] by which the Court struck the Debtor's *Motion to Dismiss* filed on May 9, 2016, due to the Motion's failure to comply with the Local Rules.[9] The Court also struck the hearing on the Debtor's Motion to Dismiss which had been scheduled for June 14, 2016. At 8:30 a.m.on May 26, 2016, moments before the entry of this Order, Debtor filed an *Amended Motion to Dismiss* [Doc. 58] containing the identical content of his previous *Motion To Dismiss* which the Court struck for procedural irregularities. The latest Motion to Dismiss has the same deficiencies and will be stricken by the Court.

## Discussion

This brings us to the matter before the Court in which the Debtor seeks to strike this Court's *2004 Order* compelling him to appear and be examined by the UST on May 31, 2016. Debtor's Motion is based upon several fallacious assumptions. First, the *2004 Order is not "moot". The bankruptcy case has not been dismissed.* In fact, the Debtor's *Motion to Dismiss* was stricken by the Court due to procedural irregularities. Thus, the

---

[9] The pleading failed to comply with Local Rule 9013-1. G. "Documents filed with the Court which do not comply with the Local Rules and the ECF Guidelines may be stricken without notice and without time to correct the deficiency(ies) at the Court's discretion." See Local Rule 9010-1.1.

issue of dismissal is not even before the Court. The only pending motion before the Court is the UST's *Conversion Motion* which is set for hearing on June 14, 2016.

Second, if Debtor wished to seek relief from the Court's *2004 Order* the proper way to proceed would have been to file a motion requesting the court vacate the order pursuant to Fed. R. Civ. P. 60(b), assuming the Debtor could state grounds under Rule 60(b) by which the *2004 Order* could be vacated or modified. Debtor's seeking to have the Court "strike" its own order is a further demonstration of both Debtor's hubris and procedural ineptness.

Third, Debtor's *Motion* itself is procedurally infirm in that it seeks to both strike the Court's *2004 Order* and "to allow the Chapter 13 bankruptcy to be voluntarily dismissed" in violation of Local Rule 9013-1(B) which prohibits motions from containing multiple requests for relief except for certain limited exceptions not applicable here. Further, the title of the *Motion* indicates a "Combied (sic) Brief" is included, when in fact no such brief or any authority is included in the body of the *Motion* in violation of Local Rule 9013-1(C).

More troubling to the Court than the continuing plethora of procedural deficiencies are the substantive statements contained in Debtor's *Motion.* In his *Motion,* Debtor "admits that the property of the estate of Maxine E. Oliver was inadvertently left off the previous 13 (sic) bankruptcies". It simply strains credulity that a bankruptcy lawyer with more than thirty years experience and having been involved in over 1300 bankruptcy cases[10] could "inadvertently" omit from his own bankruptcy schedules, not once but three times, approximately fourteen tracks of property worth a stated value in excess of half a

---

[10] See, Trustee's *Objection* ¶ 12, Doc. 48.

million dollars and that he was the sole heir of his mother's pending probate proceeding.

There is an obligation for an attorney representing the debtor to engage in reasonable pre-filing investigative duties to ensure the accuracy of schedules. As stated in *In re Robinson,* 198 B.R. 1017, 1024 (Bankr. N.D. Ga. 1996):

> "The duty of reasonable inquiry imposed upon an attorney requires the attorney (1) to explain the requirement of full, complete, accurate, and honest disclosure of all information required of a debtor; (2) to ask probing and pertinent questions designed to elicit full, complete, accurate, and honest disclosure of all information required of a debtor; (3) to check the debtor's responses in the petition and Schedules to assure they are internally and externally consistent; (4) to demand of the debtor full, complete, accurate, and honest disclosure of all information required before the attorney signs and files the petition; and (5) to seek relief from the court in the event that the attorney learns that he or she may have been misled by a debtor." (citations omitted).

In his three prior bankruptcies the Debtor was acting both as the debtor and the attorney. As a result, he certainly cannot claim to have been misled by his client in not taking seriously the importance of complete accuracy and disclosure. Moreover, by virtue of the attorney's status as an officer of the court, he owes a duty to the integrity of the system to provide full, complete, accurate and honest disclosure of all information required of a debtor. This he clearly did not do.

Debtor asserts in his *Motion* that "the lack of listing (of the omitted assets) would have had no effect on the previous bankruptcies". The Court fails to see how the proper inclusion of nonexempt property worth more than half a million dollars would not have an "effect" on the administration of the bankruptcy estate. More important than the "effect", however, is that "the bankruptcy schedules and statement of financial affairs do not ask the

debtor to make an assessment of what *he* thinks are important assets or debts. Debtor[s] must, under oath, list *all* creditors and assets. . .." *The Cadle Co. v. King (In re King)*, 272 B.R. 281, 300 (Bankr. N.D. Okla. 2002 ). A debtor's claim of "inadvertence", "mistake" or "I didn't think it was important" has its limits, and is particularly difficult for the Court to accept in the case of an experienced bankruptcy attorney acting as both counsel and debtor. "A debtor has an uncompromising duty to disclose *whatever* ownership interests are held in property", and "it is not for the debtor to pick and choose or obfuscate the answers". *Fokena v. Tripp (In re Tripp)*, 224 B.R. 95 (Bankr. N.D. Iowa 1990). The dismissive manner by which Debtor treats the omission of substantial assets from his Schedules is unworthy of a member of the bar and not acceptable to the Court.

Debtor's assertion that the omission of the property from the Schedules "would have made a significant difference in a Chapter 7" but not in a Chapter 13 is simply not true. Whether it be in Chapter 7 or Chapter 13, the trustee was entitled to know the full extent of the debtor's estate and to administer the same, particularly in a case of nonexempt assets. Similarly fallacious, indeed ludicrous, is Debtor's argument that his failure to disclose assets in his bankruptcies was somehow excused or negated by the fact that "the oil and gas leases were done properly through the Probate Court in Logan County". [*Motion,* pg.1]. It's of little importance to this Court that Debtor may have followed appropriate procedure in the state probate proceeding when he failed to follow the most rudimentary and important aspects of federal bankruptcy law.

Federal Rule of Bankruptcy Procedure 2004 provides "parties in interest" broad authority to conduct investigatory examinations of the debtor and other entities in matters

9

related to the debtor, debtor's finances or other matters affecting the debtor's estate, or the debtor's right to a discharge. "Parties in interest" is not defined in the Bankruptcy Code or Rules, but there is little doubt that the UST has standing pursuant to the general authority of the UST to raise, appear and be heard on any issue in the bankruptcy case granted in 11 U.S.C. §307, and the UST's supervisorial and administrative duties described in 28 U.S.C. §586.  See e.g., *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 141 (3rd Cir. 1994); *In re Donovan Corp.,* 215 F.3d 929, 930 (9th Cir. 2000); *In re Wilson*, 413 B.R. 330 (Bankr. E.D. La. *2009); BAC Home Loans Servicing, LP v. McDermott (In re Santiago),* 2011 WL 1257209; *In re DeShelter*, 453 B.R. 295 (Bankr. S.D. Ohio 2011); *In re Michalski*, 449 B.R. 273 (Bankr. N.D Ohio 2011).

The UST has standing to conduct 2004 exams of bankruptcy debtors and creditors even though the UST has no direct pecuniary interest in the outcome of the matter.  *In re Countrywide Home Loans, Inc.*, 384 B.R. 373 (Bankr. W.D. Pa. 2008);  *In re Underwood*, 457 B.R. 635 (Bankr. S.D. Ohio 2011); *In re Deshelter*, supra. "Nearly every court considering this issue has determined that §307 provides the UST with very broad and wide reaching standing." *In re Wilson*, 413 B.R. 330 (Bankr. E.D. La. 2009).  Under the facts of this case, there is no legal basis by which Debtor can successfully challenge the UST's standing to seek to conduct the 2004 examination which this Court has previously ordered.  Indeed, the facts of this case compel the UST to conduct such an examination.

Accordingly, for the reasons stated herein, the Debtor's *Motion to Strike* the 2004 examination set for May 31, 2016 [Doc.46] is hereby **DENIED.**

**# # # #**